IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY CRISCI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRIDGEVILLE RESTAURANT GROUP, LLC; MT. NEBO FOODS, LLC; MICHAEL MCMULLEN; AND JAMES A. IRVINE,<br><br>　　　　　Defendants. | 2:23-CV-01909-CCW |

## OPINION

Plaintiff Mary Crisci claims that Defendants discriminated against her on the basis of her sex (female) by paying her less than her male coworkers, in violation of Title VII of the Civil Rights Act and the federal Equal Pay Act; and retaliated against her for engaging in protected activity, in violation of the Fair Labor Standards Act ("FLSA"). She also brings various state law claims. Defendants have moved for summary judgment on all claims. ECF No. 44. For the reasons that follow, the Court will grant Defendants' Motion.

### I.      Material Facts

The following facts are drawn from the parties' Concise Statements of Material Facts, ECF Nos. 46, 55, 57, and are undisputed unless otherwise noted.[1]

Defendant Bridgeville Restaurant Group, LLC ("BRG") operates various Dee Jay's restaurants in Pennsylvania, with locations in Wexford, Collier/Bridgeville, and Washington. ECF

---

[1] Ms. Crisci's Statement of Material Facts and Responses to Defendants' Statement of Material Facts, ECF No. 55, contain citations to documents that appear to be notes of deposition testimony and contain charts with excerpts of the deposition testimony. Defendants contend, however, that the cited excerpts do not align with the actual deposition testimony. Citing to notes of the deposition testimony, instead of the deposition transcript itself, does not comply with the Local Civil Rules which require a "cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record." L. Civ. R. 56.B. The Court will address the relevant factual disputes below.

No. 55 ¶ 2. Defendant Mt. Nebo Food Group operates a Dee Jay's restaurant in Weirton, West Virginia. *Id.* ¶ 3. Defendants James Irvine and Michael McMullen are partial owners of both BRG and Mt. Nebo. *Id.* ¶ 4. At Defendants' restaurants, there is a hierarchical chain-of-command with Mr. McMullen at the top, followed by Mr. Irvine as the second-in-command. ECF No. 57 ¶¶ 15–16. Regional or district managers occupy the third-in-command position, followed by the general managers, with the assistant general managers and kitchen managers both occupying the fifth-in-command position. *Id.* ¶¶ 17–19.

On June 9, 2022, BRG hired Plaintiff Mary Crisci, an adult female, at the Collier/Bridgeville location. ECF No. 55 ¶¶ 2, 5. Ms. Crisci started as a service manager/front house manager[2] with a salary of $52,000 per year. *Id.* ¶ 13. Although Ms. Crisci did not work at the Mt. Nebo location in West Virginia, some of Ms. Crisci's paychecks were issued by Mt. Nebo, instead of BRG. *Id.* ¶ 11. In September 2022, Ms. Crisci was promoted to general manager of BRG and given a salary increase to $60,000 per year. *Id.* ¶ 16. As a general manager, Ms. Crisci "was responsible for handling and investigating sexual harassment complaints [and s]he also had the authority to fire employees."[3] *Id.* ¶ 35. Ms. Crisci contends that Mr. Irvine asked her "to train managers in West Virginia to schedule the West Virginia employees in a manner to force them to quit." *Id.* ¶¶ 39, 40. Defendants deny this assertion. *Id.*

While Ms. Crisci worked for Defendants, BRG employed two male kitchen managers, William Bieber and JD Rau, who were paid more than Ms. Crisci. *Id.* ¶ 27. As kitchen managers, Mr. Bieber and Mr. Rau had different training and duties than Ms. Crisci as they attended culinary

---

[2] Ms. Crisci does not explain what level a service manager or front house manager occupies in the chain-of-command. *See generally* ECF Nos. 46, 55, 57.

[3] Ms. Crisci does not elaborate on her responsibilities as a general manager, nor does she explain what her duties were as a service manager/front house manager.

2

school and were responsible for cooking food for the restaurant. *Id.* ¶¶ 28, 29. In May 2022, BRG hired Jeff Datres as an assistant general manager and paid him $60,000. ECF No. 57 ¶¶ 8, 11. In September 2022, he was promoted to general manager. *Id.* Defendants maintain that when Mr. Datres was promoted to general manager his salary remained $60,000 per year, while Ms. Crisci contends that his salary increased. ECF No. 55 ¶ 32 (asserting that Mr. Datres was paid $60,000 per year as a general manager); ECF No. 57 ¶ 12 (asserting that Mr. Datres surely received a pay raise as general manager).

On January 22, 2023, Mr. McMullen decided to terminate Ms. Crisci's employment based on her allegedly poor management of the restaurant, customer and staff complaints, and missing cash from the safe. ECF No. 55 ¶¶ 59, 60. On April 18, 2023, Ms. Crisci filed a sex discrimination complaint with the Equal Employment Opportunity Commission and requested that it be cross-filed with the Pennsylvania Human Relations Commission. ECF No. 57 ¶ 58. On November 3, 2023, Ms. Crisci filed a complaint against Defendants in this Court, and on January 16, 2024, she filed her Amended Complaint. ECF Nos. 1, 19. In her Amended Complaint, Ms. Crisci brings multiple claims under state and federal law, including a claim for unlawful retaliation and termination, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., as well as West Virginia state laws (Counts I and III); sex discrimination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), the Equal Pay Act, 29 U.S.C. § 206, et seq., and Pennsylvania state law (Count II); failure to pay wages in violation of Pennsylvania state law (Count IV); and civil conspiracy in violation of Pennsylvania law (Count V).[4] ECF No. 19. Defendants now move for summary judgment on all of Ms. Crisci's claims. ECF No. 44. With briefing complete, the Motion is ripe for adjudication. ECF Nos. 44, 45, 46, 54, 55, 57, 59.

---

[4] The Court has jurisdiction over the FLSA, Title VII, and Equal Pay Act claims, which raise federal questions, under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

## II.     Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks omitted). Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87. Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his

4

favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence…." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted). Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up).

### III. Discussion

Defendants seek summary judgment on all of Ms. Crisci's federal claims. First, they argue that Ms. Crisci has failed to make out a prima facie case of sex discrimination under Title VII. ECF No. 45 at 8–12. Second, Defendants assert that even if Ms. Crisci has made out a prima facie case, she has failed to establish that Defendants' legitimate non-discriminatory reasons for terminating her were pretextual. *Id.* Next, Defendants argue that Ms. Crisci has failed to make out a prima facia case of retaliation under the FLSA because she cannot show that she engaged in protected activity. *Id.* at 7. Finally, Defendants assert that Ms. Crisci has not met her burden under the Equal Pay Act of showing that male co-workers performing equal work were paid more than she was. *Id.* at 13–16. The Court will address each argument in turn.

#### A. Legal Framework for the FLSA Retaliation and Title VII Discrimination Claims

The *McDonnell Douglas* burden-shifting framework applies to both Ms. Crisci's Title VII disparate treatment and FLSA retaliation claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Burton*, 707 F.3d at 425–27 (applying the *McDonnell Douglas* burden shifting framework to a Title VII discrimination claim); *Cononie v. Allegheny General Hosp.*, 29

F. App'x 94, 95 (3d Cir. 2002) (applying the *McDonnell Douglas* burden shifting framework to an FLSA retaliation claim); ECF Nos. 45 at 8 (applying the *McDonnell Douglas* burden-shifting framework); 54 at 16–19 (same).

The *McDonnell Douglas* analysis has three steps. First, the plaintiff must point to evidence sufficient to satisfy the elements of a prima facie case of employment discrimination or retaliation, thereby creating an inference that her employer acted unlawfully. *See Burton*, 707 F.3d at 426. Next, the defendant must rebut this inference by articulating a legitimate, non-discriminatory reason for its actions. *See id.* The burden of production then shifts back to the plaintiff, who, in order to survive summary judgment, must provide evidence from which a jury could reasonably infer that the defendant's proffered explanation for its conduct is, in reality, pretext for unlawful discrimination or retaliation. *See id.* at 426–27; *see also Fuentes v. Perskie*, 32 F.3d 759, 763–64 (3d Cir. 1994) (setting forth burden shifting framework under *McDonnell Douglas* at summary judgment). Although the *McDonnell Douglas* framework contemplates a shifting burden of *production*, the burden of *persuasion* always remains with the plaintiff. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

### B. Defendants are Entitled to Summary Judgment on the FLSA Retaliation Claims.

In Counts I and III, Ms. Crisci asserts that Defendants retaliated against her for refusing to assist them in constructively discharging certain employees and for inquiring about receiving a raise and bonus. ECF No. 19 at 6–7. Defendants respond that these actions do not constitute protected activity under the FLSA, and Ms. Crisci has not pointed to any record evidence showing that she submitted a complaint asserting an FLSA protected right. ECF No. 45 at 7. In response, Ms. Crisci agrees that there is no precedent establishing these actions as protected activity, but she asks the Court to interpret the FLSA expansively so as to find that the refusal to assist in

constructively discharging employees is protected activity. ECF No. 54 at 2–3. Ms. Crisci, however, does not address her claim in Count III that Defendants retaliated against her for asking about a pay raise and bonus. *See generally id.*

Under the FLSA, an employer cannot "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). Therefore, to prove FLSA retaliation, a plaintiff must establish (1) that she engaged in a protected activity, (2) that her employer took an adverse employment action against her, and (3) causation between her protected activity and the employer's adverse action. *Rhoades v. Young Women's Christian Ass'n*, 423 F. Appx. 193, 198 (3d Cir. 2011). Here, the parties only dispute whether Ms. Crisci's actions—in refusing to constructively discharge employees and inquiring about a pay raise—constitute protected activity.

Ms. Crisci acknowledges that she "cannot locate precedential authority wherein refusing to retaliate was evaluated as potential protected activity under the FLSA."[5] ECF No. 54 at 2. Despite this, she asserts that the FLSA has "a broad remedial purpose" and, therefore, the Court should look to the FLSA's "animating spirit [and] apply[] it to activities that might not have been explicitly covered by the language." *Id.* at 3. While the FLSA is a remedial statute and "must not be interpreted or applied in a narrow, grudging manner," it only "protects employees who have filed [a] complaint." *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269–270 (3d Cir. 2022) (cleaned up) (explaining that courts have interpreted the FLSA to cover situations not explicitly

---

[5] In her Brief in Opposition, Ms. Crisci only discusses the protected activity she alleges in Count I—that she refused to help Defendants constructively discharge other employees. ECF No. 54 at 2–3. She does not, however, address the protected activity she alleges in Count III—that she asked for a pay raise and bonus. *Id.* Although Ms. Crisci does not address this activity, the Court finds that it does not constitute protected activity under the FLSA because it is not a complaint and did not put her employer on notice that she was asserting a right protected by the FLSA.

described in the statute where "the employee's activities were considered necessary to the effective assertion of employees' rights under the [FLSA], and thus entitled to protection"). Furthermore, to qualify as a protected activity, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 271–72.

Here, there is no evidence in the record that Ms. Crisci made any type of complaint—oral or written—or that Defendants believed she had. ECF Nos. 46, 55, 57. And Ms. Crisci's refusal to participate in the constructive discharge of other employees does not constitute a complaint nor does it put Defendants on notice that she was asserting a right protected by the FLSA. *See Florida-Kaclik v. SSPC*, 124 F. App'x 707, 709 (3d Cir. 2005) (affirming that plaintiff failed to state an FLSA retaliation claim where she alleged that her protected activity was complaining about potentially unethical business practices).

Therefore, the Court finds that no reasonable juror could find that Ms. Crisci engaged in a protected activity, and accordingly, she has failed to make out a prima facie case of FLSA retaliation.

### C.     Defendants are Entitled to Summary Judgment on the Title VII Claims.

In Count II, Ms. Crisci contends that Defendants discriminated against her based on her sex when they paid her less than similarly situated male employees. ECF No. 19. Defendants assert that Ms. Crisci cannot establish a prima facie case of sex discrimination, and even if she could, she cannot show that Defendants' reasons for paying her less were a pretext for discrimination. ECF No. 45.

To prove a prima facie case of employment discrimination, a plaintiff must show that (1) she is a member of a protected class, (2) that she was qualified for the position she sought to attain

or retain, (3) that she suffered an adverse employment action, and (4) the action occurred under circumstances that support an inference of intentional discrimination. *In re Tribune Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018). Here, Defendants only challenge the fourth element. ECF No. 45 at 8–12.

> To show an inference of intentional discrimination, a plaintiff may either:
>
> > (1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between [her] membership in a protected class and the adverse employment action.

*Drummer v. Hosp. of Univ. of Pa.*, 455 F. Supp. 3d. 160, 168 (E.D. Pa. 2020) (citing *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014)).

To create an inference of intentional discrimination, Ms. Crisci points to evidence of a comparator and to circumstantial evidence—namely, other female employees who were allegedly paid unfairly. ECF No. 54 at 12–15. Defendants contend, however, that the purported comparator is not similarly situated to Ms. Crisci and that her circumstantial evidence is not sufficient to show a causal nexus between her pay and her membership in a protected class. ECF No. 45 at 8–10.

Ms. Crisci proffers Mr. Jeff Datres as a comparator. ECF No. 54 at 13. In support, she contends that Mr. Datres was paid more than she was despite holding the same or similar positions with Defendants. *Id.* at 13–15. First, she asserts that Mr. Datres' role as assistant general manager was comparable to her role as a service manager, and therefore, Defendants should have paid them equally. *Id.* Instead, Defendants paid Mr. Datres a yearly salary of $60,000 while they paid Ms. Crisci only $52,000 per year. ECF No. 57 ¶¶ 6, 8. The Court finds, however, that Mr. Datres was not similarly situated to Ms. Crisci because they held different positions at the restaurant: Mr. Datres was an assistant general manager while Ms. Crisci was a service manager. *Taylor-Bray v.*

*Del. Dept. of Servs. for Children, Youth and their Families*, 627 F. App'x 79, 83 (3d Cir. 2015) (explaining that comparator and plaintiff were not similarly situated where they held different job titles). Further, Ms. Crisci has not pointed to any other evidence establishing that she and Mr. Datres were similarly situated despite holding different job titles. *Durst v. City of Phila.*, 798 F. App'x 710, 713 (3d Cir. 2020) (explaining that comparators must be similarly situated to plaintiff, considering factors such as whether the comparator and plaintiff had the same supervisor, were subject to the same standards, and engaged in similar conduct).

Ms. Crisci further contends that when she and Mr. Datres were each promoted to general manager in September 2022, she was paid less than he was. ECF No. 54 at 14–15. The record evidence, however, shows that Ms. Crisci and Mr. Datres were paid the same as general managers. The parties agree that when Ms. Crisci was promoted to general manager, she was paid $60,000. ECF No. 55 ¶ 16. Defendants contend, however, that when Mr. Datres was promoted to general manager, his salary stayed at $60,000. *Id.* ¶ 32. While Ms. Crisci disputes this fact, she has failed to show that there is a genuine dispute of material fact. In support of her position that Mr. Datres was paid more than she was as a general manager, she asserts that Mr. McMullen testified that "he was 'sure' that Mr. Datres got a pay increase when he was promoted." ECF No. 57 ¶ 12. Ms. Crisci's record cite, however, does not support this testimony. She cites to "Notes of Testimony" of Mr. McMullen which appears to be a chart with excerpts from his deposition transcript. ECF No. 56, Ex. 5. But the Court's review of the actual transcript of Mr. McMullen's deposition confirms that the pages Ms. Crisci cites do not contain the language she quotes. *Compare* ECF No. 56, Ex. 5 (chart purporting to contain an excerpt of page 183 of Mr. McCullen's deposition transcript), *with* ECF No. 58, Ex. A (page 183 of Mr. McCullen's deposition transcript that does not contain the language Ms. Crisci quotes). Therefore, because Ms. Crisci cannot point to record

10

evidence contradicting Defendants' evidence that she and Mr. Datres were paid the same as general managers, the Court finds that there is not a genuine dispute of material fact. Accordingly, the Court concludes that as general managers, Ms. Crisci and Mr. Datres were paid the same, and he does not serve as a comparator establishing an inference of intentional discrimination.

Furthermore, to show an inference of intentional discrimination, Ms. Crisci points to circumstantial evidence: namely, that Defendants paid other female employees less than similarly situated male employees. ECF No. 54 at 14. First, Ms. Crisci asserts that a female assistant manager was paid $60,000, and then terminated after asking for a raise. ECF No. 57 ¶ 10. But such evidence does not create an intentional inference of discrimination because Ms. Crisci, not Defendants, hired this assistant manager and set her pay at $60,000. *Id.* Second, Ms. Crisci points to another female assistant general manager who was paid $52,000. ECF No. 57 ¶ 9. But such facts are immaterial to showing that Ms. Crisci's gender is the reason why her pay was lower. Therefore, because Ms. Crisci cannot show that her gender was the reason that she was paid less, or that these individuals were similarly situated, the Court finds that Ms. Crisci has not pointed to circumstantial evidence establishing an inference of intentional discrimination.

Because Ms. Crisci has failed to point to a similarly situated comparator who was treated more favorably, and because she has not established a causal nexus between her pay and membership in a protected class, no reasonable juror could find an inference of intentional discrimination. Accordingly, Ms. Crisci has failed to establish a prima facie case of sex discrimination.

### D.     Defendants are Entitled to Summary Judgment on the Equal Pay Act Claims.

In Count II, Ms. Crisci also brings a claim under the Equal Pay Act, contending that Defendants paid her less than her male coworkers for substantially similar work. ECF No. 19.

11

Defendants respond that Ms. Crisci cannot establish a prima facie case of unequal pay because she has not shown that she engaged in work that was equal to that of her male coworkers. ECF No. 45.

Under the Equal Pay Act, employers are prohibited from discriminating "between employees on the basis of sex by paying [unequal] wages . . . to employees of the opposite sex in such establishment for equal work." 29 U.S.C. § 206(d)(1). A two-step burden-shifting framework applies to Equal Pay Act claims. *Steele v. Pelmor Lab'ys Inc.*, 642 F. App'x 129, 135–36 (3d Cir. 2016). Under this framework, the plaintiff must first establish a prima facie case that she was paid differently than members of the opposite sex for performing equal work. *Id.* If the plaintiff makes such a showing, the "burden of *persuasion* then shifts to the *employer* to demonstrate the applicability of one of the four affirmative defenses." *Id.* Equal work is work "which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *see also Johnson v. Federal Exp. Corp.*, 604 F. App'x 183, 187 (3d Cir. 2015). "To determine whether two jobs involve equal work, [courts] must determine whether 'a significant portion of the two jobs is identical.'" *Johnson*, 604 F. App'x at 187 (citing *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 155–56 (3d Cir. 1985)).

Here, Ms. Crisci has not pointed to facts in the record showing that she was paid less than male counterparts for equal work. The majority of male counterparts she identifies held different positions within the company, and she has not shown that they performed equal work. For example, Ms. Crisci points to William Bieber and JD Rau as two male coworkers who were paid more than she was. ECF No. 55 ¶ 27. Mr. Bieber and Mr. Rau, however, held different positions from Ms. Crisci as they were chefs and kitchen managers. *Id.* As kitchen managers, Mr. Bieber and Mr. Rau had different training and duties compared to Ms. Crisci as she did not go to culinary

school and was not responsible for cooking food for the restaurant.  *Id.* ¶¶ 28, 29.  *See Johnson*, 604 F. App'x at 188 (finding work unequal where comparator maintained greater qualifications than plaintiff and performed duties that required skills beyond those exercised by plaintiff).  Ms. Crisci also contends that she was paid less than another general manager, Jeff Datres.  But as noted above, the record evidence shows that Ms. Crisci and Mr. Datres were paid the same as general managers.  And Ms. Crisci has pointed to no facts in the record indicating that when Mr. Datres was an assistant general manager, he performed equal work to her as a service manager.  *Jordan v. Mel Blount Youth Home of Pa*, No. 05-1331, 2008 WL 2446334, at *5 (W.D. Pa. June 16, 2008) (Conti, J.) (finding that "Plaintiff has simply not proffered sufficient evidence for a reasonable factfinder to adduce that another employee was paid more for substantially similar work" where she put forth no specific evidence regarding the employees' job responsibilities).

Therefore, because Ms. Crisci has not pointed to a male counterpart who was paid more than she was for equal work, she has failed to establish a *prima facie* case under the Equal Pay Act.  Accordingly, Defendants are entitled to summary judgment on this claim.

E. **The Court will Dismiss Ms. Crisci's State-Law Claims.**

Ms. Crisci also brings several Pennsylvania and West Virginia state-law claims, including claims for wrongful termination and retaliation (Counts I and III), sex discrimination (Count II), failure to pay wages (Count IV), and civil conspiracy (Count V).  ECF No. 19.  Because the Court has granted summary judgment to Defendants on all of Ms. Crisci's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3) (explaining that a district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction").  Therefore, the Court will dismiss Ms. Crisci's state-law claims in Counts I–V.

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 44, will be GRANTED, such that Ms. Crisci's Equal Pay Act, Title VII, and FLSA claims in Counts I, II, and III will be dismissed, and judgment on those claims will be entered in Defendants' favor.

Furthermore, the Court declines to exercise supplemental jurisdiction over Ms. Crisci's remaining state-law claims, and such claims in Counts I–V will be dismissed.

DATED this 5th day of August, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record